**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**
**FILE NUMBER**

| | |
|---|---|
| **Rosetta Swinney**, an individual and legal guardian and next of friend to **J. S.,** a minor, | |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| | JURY TRIAL DEMANDED |
| v. | |
| **Frontier Airlines, Inc; Indigo Partners LLC; ABC Corporation 1-5; Jane Doe** and **John Doe 1-10** | |
| Defendants. | |

<u>COMPLAINT FOR DAMAGES</u>

Plaintiff Rosetta Swinney, an individual and legal guardian and next of friend to J.S., a minor, files this Complaint against the above-named Defendants and in support thereof states as follows:

## INTRODUCTION

### 1.

On April 20, 2019, Rosetta and her fourteen year old daughter [hereinafter "J.S."] was forced off Frontier Airline ["Frontier"] Flight 2066 from McCarran International Airport ['LAS'] located in Las Vegas, Nevada to Raleigh-Durham International Airport ["RDU"], after they refused to clean someone else's vomit from a seatback, floor and armrest. Ultimately, Rosetta was arrested and jailed by law enforcement and her child was placed in Nevada's Child Protective Service ["CPS"] because Rosetta refused to deplane the aircraft even though several seats were available for Rosetta to locate to away from the vomit. Rosetta was involuntary separated from her child for the first time ever. Rosetta had no control over her child's well-being and was rendered completely helpless as a mother. Rosetta and J.S. suffered and continue suffer severe mental anguished and emotional distress due to Frontier's deliberate and malicious acts. Further, Rosetta and J.S. suffers from humiliation, embarrassment and a tarnished reputation after Frontier defamed Rosetta character by knowingly disseminated lies surrounding Rosetta and J.S. removal from Flight 2066. Plaintiffs now seek damages.

Case 1:19-cv-00808-LCB-JLW   Document 1   Filed 08/08/19   Page 2 of 21

## JURISDICTION AND VENUE

### 2.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant 28 U.S. Code § 1391, Defendant Frontier Airlines, Inc has sufficient contacts in this district and events alleged herein arose out of this district.

## PARTIES

### 3.

Plaintiff Rosetta Swinney ["Plaintiff"] is a citizen of the State of North Carolina, a resident of Durham County, and a resident of the City of Durham, North Carolina and a citizen of the United States of America.

### 4.

J. S., a minor. Plaintiff brings the matter on the behalf of J.S. as next of friend and legal guardian.

### 5.

Frontier Airlines, Inc ["Frontier"], is a foreign corporation doing business in North Carolina. Frontier may be served through its register agent Corporation Services Company at 2625 Glenwood Avenue Suite 550 Raleigh, NC 27608.

Case 1:19-cv-00808-LCB-JLW   Document 1   Filed 08/08/19   Page 3 of 21

6.

Indigo Partners, LLC is a foreign corporation doing business in North Carolina by way of its subsidiary Frontier. Indigo Partners, LLC may be served through its register agent Its registered agent is CSC Services of Nevada, Inc. at 2215-B Renaissance Dr., Las Vegas, 89119.

7.

ABC Corporation, is an unknown corporation that was responsible for cleaning Flight 2066 prior to Plaintiff and J.S. boarding the aircraft on April 19, 2019. Plaintiff will substitute name once identity is ascertained.

8.

Jane Doe and John Doe 1-10 , are unknown agents of Frontier Airlines, Inc, Indigo Partners, LLC and ABC Corporation, who acts or omission caused injury to Plaintiff and J.S. on April 19- 20. 2019. Plaintiff will substitute name once identity is ascertained.

## BACKGROUND FACTS

9.

On April 19, 2019, Plaintiff and her fourteen year old daughter J.S., arrived to LAS after attending a wedding in Las Vegas. Plaintiff purchased her roundtrip tickets

4

from RDU to LAS and back to RDU via internet from her home in Durham, North Carolina

10.

Plaintiff and her daughter were ticketed passengers for Frontier Airline Frontier Flight 2066 with service from LAS to RDU.

11.

Upon arriving to their departure gate at LAS, it was disclosed to the passengers of Flight 2066, that Flight 2066 would be delayed for approximately twenty minutes due to the cleaning of the aircraft.

12.

After the delay, Plaintiff and her child  boarded the aircraft. Upon reaching their seat location on the aircraft, J.S.  placed  her carry-on bag under the seat in front of her; however, due to the limited leg room after placing her carry-on bag under the seat in front of her, J.S. decided to relocate her carry-on bag to the overhead compartment.

13.

While attempting to relocate her carry-on bag  J.S. felt a liquid substance on her hands. (See Exhibit "A")  At that time, J.S. smelled the liquid and believed it to be vomit. J.S. then told Plaintiff that she believed she has  someone's vomit on hands.

Plaintiff and J.S. then noticed that the floor was covered in vomit where J.S. carry-on bag had been placed, vomit was on J.S.'s seatback tray and inside of the seat pocket.

14.

In response to vomit being all over her child's hands, Plaintiff pushed the flight attendant call button to alert a flight attendant to come to her and J.S's. location. Once a flight attendant arrived to their location, Plaintiff informed the flight attendant [hereinafter "Jane Doe-1"] that the vomit was on the seat in front of her daughter and vomit had gotten on her child.

15.

Jane Doe-1 left and returned to Plaintiff and her child's location with Clorox wipes and rubber gloves so that Plaintiff and her child could clean the vomit. Plaintiff then asked Jane Doe-1 for some napkins so that her daughter could clean her daughter's hand. Jane Doe #1 refused Plaintiff's request and responded by saying "it's better than nothing." Plaintiff then directed her daughter to come out of the row so Jane Doe-1 could clean the vomit. However, Jane Doe-1 told the Plaintiff "it was not her job." At that time, a passenger seated in the row behind Plaintiff and J.S. asked Jane Doe-1 "then who job was it to clean the vomit?" In response, Jane Doe-1 shrugged her shoulders and walked to the front of the plane.

16.

Plaintiff and her daughter waited for approximately ten minutes for someone to return and address the vomit issue. However, the lack of a response prompted Plaintiff to walked to the front of the plane and ask Jane Doe-1 what was her name and to speak to Jane Doe-1's supervisor. Plaintiff was unable to see Jane Doe-1's name tag because it was covered. Jane Doe-1 then told Plaintiff not worry about her name because she was not flying with them tonight. Unbeknownst to Plaintiff, Jane Doe-1 had already vocalized Plaintiff was not flying on Flight 2066 "no matter what."

17.

Plaintiff returned to her seat where her child and the vomit was located. Unilaterally, Plaintiff relocated herself and her child to available and unoccupied seats on the aircraft. Subsequently, another individual (hereinafter "Jane Doe-2") boarded the plane and demanded that Plaintiff and her daughter get out of the seats they were sitting in and get off the aircraft. However, Plaintiff refused to deplane the aircraft on the grounds that she and her daughter had done nothing wrong.

18.

Eventually, local law enforcement boarded the plane and informed Plaintiff the Frontier wanted Plaintiff and her daughter off their aircraft. Plaintiff explained to the officers that she did nothing wrong and she had no other way off getting home. Further,

Plaintiff informed the officers that vomit was on her daughter's seat and she asked Frontier to clean it or relocated them. The officers sympathized with Plaintiff's circumstances and concerns; however, the officers reiterated to Plaintiff that Frontier wanted Plaintiff and her daughter off their plane. Plaintiff refused to deplane on the grounds that she and her daughter had done nothing wrong.

19.

Due to Plaintiff's refusal to deplane the aircraft, all other passengers were told to deplane the aircraft by law enforcement . Frontier falsely stated over the plane's intercom that "because of one rude passenger we are asking everyone to deplane."

20.

Eventually, Plaintiff deplaned the aircraft. Once Plaintiff reached the gate area she was placed under arrested for trespassing. After Plaintiff was handcuffed in front of her fellow passengers and her child, Plaintiff became extremely emotional and outwardly expressed to others that she was getting arrested for refusing to clean another person's "throw up." After Plaintiff's arrest and transportation to jail. J.S. was placed in CPS custody.

21.

After Plaintiff's arrest, an announcement was made that the Flight 2066 would continue to be delayed due a biohazard being on the plane. Notably, the delay was about

8

an hour so that cleaning personnel could board the plane and dispose of the same bio waste that Plaintiff complained about to Jane Doe-1.

22.

As aforementioned, On April 19-20, 2019, several seats were available on Flight 2066. Plaintiff and her child could have been easily relocated to other seats on aircraft by Frontier's agents. According to several other passengers' accounts what on Flight 2066, Plaintiff was never rude, irate or confrontational at any time. In fact, Plaintiff stayed calm and spoke in a normal tone. Also according to several passengers Jane Doe-1 was extremely rude, unprofessional and disrespectful to Plaintiff. Further, passengers overheard Jane Doe-1 state "that she was kicking Plaintiff off this plane no matter what."

23.

According to Plaintiff and other passengers aboard Flight 2066, several seats were available on the aircraft that Plaintiff and her daughter could have been easily relocated away from the vomit. Also, according to several other passengers on Flight 2066, Plaintiff was never rude, irate or confrontational at any time. In fact, Plaintiff stayed calm and spoke in a normal tone. Also according to several passengers Jane Doe-1 was extremely rude, unprofessional and disrespectful to the Plaintiff. Further, passengers overheard Jane Doe-1 state " that she was kicking Plaintiff off this plane no matter what."

9

24.

On April 23, 2019, Frontier released the following statement:

**"During boarding of flight 2066 from McCarran International Airport (LAS) to Raleigh-Durham International Airport (RDU) last week, two passengers told the flight attendants that vomit was present in their seat area. The flight attendants apologized and immediately invited the mother and her teenage daughter to move to either end of the plane so that the seat area could be cleaned. The mother and daughter were also told that once boarding was complete they would be provided other seats if available. The daughter was also offered cleaning products and invited to use the lavatory to wash up. The mother was unsatisfied with the response and became disruptive. As a result, the flight attendants determined that the mother and daughter should be deplaned and accommodated on another flight. The mother refused, and following procedure, law enforcement was called. Law enforcement then requested that everyone deplane so that the mother and daughter could be removed allowing the aircraft to be re-boarded and depart. We apologized to our passengers for the inconvenience caused by the departure delay. The safety of passengers and crew is our top priority at Frontier."**

25.

The above statement, or various forms of the same, was deliberately circulated by Frontier on multiple social media platforms, news outlets, and across the world-wide web. Frontier's assertion that "flight attendants apologized and immediately invited Plaintiff and her daughter to move to either end of the plane so that the seat area could be cleaned," is false. Further, Frontier's statement that Plaintiff became disruptive" is also untrue. It is important to note, Frontier's account of what transpired on Flight 2066

has been discredited by several passengers who had first-hand accounts of what occurred.

26.

Plaintiff and J.S. suffered severe mental anguished and emotional distress due to Defendants; deliberate and malicious acts. Further, Plaintiff and J.S. now suffers from humiliation, embarrassment and a tarnished reputation after Frontier defamed Plaintiff's character by knowingly disseminated lies surrounding Rosetta and J.S. removal from Flight 2066. Finally, Plaintiff and her daughter were subject to a well-being visit from North Carolina Child Protected Service upon their return to North Carolina. Plaintiff now feels as though her and her child is part of the "system" all because she refuse clean another person vomit and despite the fact she has been a hard working and great parent for all of her children.

Case 1:19-cv-00808-LCB-JLW   Document 1   Filed 08/08/19   Page 11 of 21

## CLAIMS FOR RELIEF

## COUNT ONE

## ABUSE OF PROCESS

27.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

28.

Defendants knowingly misused the legal process for its ulterior purpose of removing Plaintiff and J.S. from Flight 2066. Specifically, Defendants Frontier Airlines, Inc, Indigo Partners LLC and Frontier's agent Jane Doe-1, misused law enforcement and or the Transportation Security Administration to removed Plaintiff and J.S. for Plaintiff's refusal to clean another person's bio-waste. At no time while aboard Flight 2006, Plaintiff or J.S. was rude, disruptive or non-complaint to Frontier's agent Jane Doe-1's request or any other Frontier agents' request that warranted Plaintiff or J.S. removal from the aircraft. Defendant Frontier Airlines, Inc, Indigo Partners LLC and Frontier's agent Jane Doe-1 had a duty to Plaintiff and J.S. to remove all bio-waste from their aircraft and to exercise certain safe practices as it relates to the presence and the removal of bio-waste on aboard their aircrafts pursuant to well established rules and regulations. Defendant Frontier Airlines, Inc, Indigo Partners LLC and Frontier's agent

12

Jane Doe-1 failed to adhere to the rule of law but instead misused law enforcement and or the Transportation Security Administration to served their ulterior purpose.

## COUNT TWO

### DEFAMATION
(Slander and Libel)

29.

The Plaintiff incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

30.

Defendants Frontier Airlines, Inc, Indigo Partners LLC and Frontier's agent deliberately circulated a false narrative in written form describing Plaintiff's behavior and accounts of what transpired aboard Flight 2066. Defendants circulated its false narrative through multiple social media platforms, news outlets, and across the world-wide web.  Specifically, Defendants falsely represented to the public that Plaintiff was "disruptive" and the following:

> **The flight attendants apologized and immediately invited the mother and her teenage daughter to move to either end of the plane so that the seat area could be cleaned. The mother and daughter were also told that once boarding was complete they would be provided other seats if available. The daughter was also offered cleaning products and invited to use the lavatory to wash up. The mother was unsatisfied with the response and became disruptive.**

13

31.

As result of Plaintiff and J.S. was humiliated, embarrassed and have suffered a tarnished reputation after Defendant knowingly disseminated lies surrounding Plaintiff and J.S. removal from Flight 2066. Defendants' assertion that "flight attendants apologized and immediately invited Plaintiff and her daughter to move to either end of the plane so that the seat area could be cleaned," is a lie.

32.

Further, on the date of the incident, Defendants Frontier Airlines, Inc, Indigo Partners LLC and Frontier's agent stated on over the planes' intercom that "because of one rude passenger we are asking everyone to deplane." Defendants' oral representation was a lie.

33.

Further, Plaintiff and J.S. now suffers from humiliation, embarrassment and a tarnished reputation after Defendants' defamed Plaintiff's character by knowingly disseminated lies surrounding Plaintiff and J.S. removal from Flight 2066.

14

## COUNT THREE

## NEGLIGENCE

### 34.

The Plaintiff incorporates by reference paragraphs 1 through 26  of this Complaint as if fully set forth herein.

### 35.

Defendants as "Common Carriers" owed a high duty of care to Plaintiff and J.S. and all passenger on Flight 2066, to ensure the safety of all passengers aboard the aircraft. Defendants are required by law to take swift action to remove bio-waste aboard their aircraft and to strictly adhere certain safe practices as it relates to the removal of bio-waste on aboard their aircrafts pursuant to well established rules and regulations.

### 36.

All Defendants breached their duty of care by failing to adhere to well established rules and regulations it relates to the removal of bio-waste.  Notably, Flight 2066 was delayed for approximately twenty minutes in order to clean the aircraft and an additional hour to clean the bio-waste after Defendants had Plaintiff wrongfully removed from the flight and jailed and her daughter placed in CPS's custody.

### 37.

As a result of  Defendants' negligence Plaintiff and J.S. was substantial harmed. Plaintiff, J.S. and all passengers  were  to  exposed  to  a  bio-waste  with  a  potential

15

unknown blood or airborne pathogens. J.S.'s skin was directedly exposed to the bio-waste.

## COUNT THREE

## GROSS NEGLIGENCE

### 38.

Plaintiff incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

### 39.

Defendants knowingly and recklessly disregarded the safety of Plaintiff, J.S. and all other passenger on Flight 2066, by failing to take immediate action to remove bio-waste that was potentially contaminated with a blood or airborne pathogens. Instead, Defendants told a mother and her child to clean another person's bio-waste. Essentially, Defendants were willing to leave the fate of the entire passengers safety in the hands of a child.

### 40.

All Defendants knowingly breached their duties by failing to adhere to well established rules and regulations it relates to the removal of bio-waste.

16

41.

As a result of Defendants' negligence Plaintiff and J.S. was substantial harmed. Plaintiff, J.S. and all passengers were to exposed to a bio-waste with a potential unknown blood or airborne pathogens. J.S. was directectly exposed to the bio-waste.

## COUNT FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42.

Plaintiff incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

43.

Defendants' conduct was extreme and outrageous by removing a mother and a child from a flight that the mother had purchased her tickets for because the mother refused to clean another person's vomit and refused to allow her child to clean another's person vomit.

44.

Defendants were aware that their action could cause severe emotional distress to Plaintiff and her child or a high probability that their action would cause severe emotional distress to Plaintiff and her child.

17

45.

Plaintiff and her child suffered severe emotional distress as a result of the Defendants' extreme and outrageous conduct.

**<u>COUNT FIVE</u>**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

46.

Plaintiff incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

47.

All Defendants owed a duty to Plaintiff and J.S. and all other passenger on Flight 2066 that no bio-waste was aboard their aircraft and to adhere certain safe practices as it relates to the removal of bio-waste on aboard their aircrafts pursuant to well established rules and regulations.

48.

All Defendants breached their duty by failing to adhere to well established rules and regulations it relates to the removal of bio-waste.

18

49.

Defendants were aware that their negligence could cause severe emotional distress to Plaintiff and her child or a high probability that their negligence would cause severe emotional distress to Plaintiff and her child.

50.

As a result of Defendants' negligence Plaintiff and her child suffered and now suffers severe emotional distress.

**WHEREFORE**, Plaintiff demands that a trial by jury be had on all Counts of her Complaint and that, following such trial, judgment be entered on her behalf against Defendant granting the following relief:

1. An award of compensatory damages for Plaintiff, in an amount **Fifty-Five Million** by the enlightened conscience against the Defendants;

2. An award of punitive damages for Plaintiff, in an amount of to be determine by the enlightened conscience against the Defendants in their individual capacities;

3. An award of treble damages for Plaintiff, in an amount of to be determine by the enlightened conscience against the Defendants in their individual capacities;

4. An award of pre-judgement and post-judgment interest;

Case 1:19-cv-00808-LCB-JLW   Document 1   Filed 08/08/19   Page 19 of 21

5. Any other and further relief this Court deems just and proper; and

6. Any other and further relief to which they may be entitled.

Respectfully submitted this 8th day of August 2019.

PLAINTIFF,

Rosetta Swinney

By her Attorneys,


/s/Julian M. Hall
Julian M. Hall
North Carolina Bar No.: 43398


Julian M. Hall
The Law Office of Julian M. Hall
817 N Mangum Street
Durham, NC 27701
Tel. (919) 530-1130
Fax. (919) 530-1131
Julianmhall01@gmail.com
*Attorney for Rosetta Swinney admitted in this District*


/s/Harry M. Daniels
Harry M. Daniels
Georgia Bar No.: 234158


DANIELS & JAMES, LLC
233 Peachtree St. NE Ste. 1200
Atlanta, GA 30303
Tel. 678.664.8529
Fax. 800.867.5248
daniels@danielsjameslaw.com

20

*Attorney for Rosetta Swinney by Special Appearance*

/s/Robert D. James

Robert D. James

Georgia Bar No.: 389148

DANIELS & JAMES, LLC

233 Peachtree St. NE Ste. 1200

Atlanta, GA 30303

Tel. 678.664.8529

Fax. 800.867.5248

robert@danielsjameslaw.com

*Attorney for Rosetta Swinney by Special Appearance*

And

/s/Sharika M. Robinson

Sharika M. Robinson

North Carolina Bar No.: 44750

Sharika M. Robinson

The Law Offices of Sharika M. Robinson, PLLC

10230 Berkeley Place Drive

Charlotte, NC 28262

Tel. 704.561.6771

Fax. 704.561.6773

srobinson@sharikamrobinsonlaw.com

*Attorney for Rosetta Swinney by Special Appearance*