IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
No. 1:19-cv-00808-LCB-JLW

| | |
|---|---|
| ROSETTA SWINNEY, )<br>an individual; and guardian for J.S. )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FRONTIER AIRLINES, Inc., )<br>)<br>Defendants. )<br>)<br>) | **CIVIL ACTION NO.**<br>**1:19-cv-00808-LCB-JLW** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW, Plaintiff Rosetta Swinney, and individual and legal guardian and next of friend to J.S., a minor, files this Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Plaintiffs respectfully request this Honorable Court to deny Defendants' Motion to Dismiss, showing the Court as follows:

### INTRODUCTION

On April 20, 2019, Ms. Swinney and her fourteen-year-old daughter (hereinafter, "J.S."), were forced off Frontier Airlines ("Frontier") Flight 2066 from McCarran International Airport ("LAS"), located in Las Vegas, Nevada, to Raleigh-

Durham International Airport ("RDU"), after they refused to clean someone else's vomit from the seatback, floor, and armrest of the seat they were assigned to. Ultimately, Ms. Swinney was arrested and jailed by law enforcement and J.S. was placed in Nevada's Child Protective Services after Ms. Swinney refused to deplane the aircraft, although several seats were available for Ms. Swinney to relocate to. Due to Ms. Swinney's arrest, she was involuntarily separated from her J.S. J.S. was placed in Nevada's Child Welfare and Child Protective Service. ("CPS"). J.S. was subjected to a stripped searched after she was in CPS custody.  Ms. Swinney had no control over her daughter's well-being and was rendered completely helpless as a mother.  Ms. Swinney and J.S. suffered and continue to suffer severe mental anguish and emotional distress due to Frontier's deliberate and malicious acts.  Further, Ms. Swinney and J.S. suffers from humiliation, embarrassment and a tarnished reputation after Frontier defamed Ms. Swinney's character by knowingly disseminating falsehoods surrounding Ms. Swinney's and J.S.'s removal from Flight 2066.  Plaintiffs now seek damages.

## STATEMENT OF THE CASE

This matter arises from an incident that occurred onboard Defendant's aircraft on April 20, 2019.  On August 8, 2019, Plaintiffs filed their Complaint. (DK 1). On December 6, 2019, Defendants filed it motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that each count fails

2

to state a claim upon which relief can be granted. Plaintiffs file the instant response in opposition to Defendants' motion to dismiss.

## ARGUMENT

For purposes of this motion, Plaintiffs re-allege and incorporate its Complaint, including its factual allegations. In responding to Defendant's motion, Plaintiff does not concede to Defendant argument at this time that the Nevada's law is the controlling authority on Plaintiffs' claims with the exception of the Plaintiff's defamation claim.

### A. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 546. While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citation omitted). "When reviewing a Rule 12(b)(6) motion for failure to state a claim, '[t]he plaintiff's factual allegations must be enough to raise a right

3

to relief above the speculative level.'" *Twombly*, 550 U.S. at 555. It requires the plaintiff to articulate facts, that when accepted as true, shows the "plausibility of 'entitlement to relief.'" *Id*. at 557. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

### B. ANALYSIS

*1. Defendant's Motion to Dismiss should be denied as it relates to Plaintiffs' abuse of process claim because Plaintiffs have pled sufficient facts as to Defendants' use of the legal process*

Plaintiffs have pled sufficient facts to support their claim for abuse of process. Under Nevada law, to support an abuse of process claim, "a claimant must show '(1)

4

an ulterior purpose by the [party abusing the process] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.'" *Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 356 P.3d 511, 519 (Nev. 2015).

In support of its motion to dismiss for failure to state a claim, Defendants cite to *Banerjee v. Cont'l Inc., Inc.*, 2016 U.S. Dist. LEXIS 141891 (D. Nev. Oct. 11, 2016), to assert that "an arrest is not a use of the judicial process, and, therefore, cannot be used as a basis for an abuse of process claim." (Doc-14 at 5). This non-binding authority, however, does not stand for such proposition. Additionally, Defendants allege that Frontier had no arrest authority. (*Id.*). Such assertion can only be made if Defendants rely on information outside Plaintiffs' Complaint, which is impermissible in a motion to dismiss. Taking Plaintiffs' allegations as true, this Court should find that Plaintiffs have alleged sufficient facts to show that a claim that is plausible on its face. *See Igbal*, 556 U.S. at 678.

### 2. *This Court should deny Defendants' motion to dismiss as it relates to Plaintiffs' defamation claim because Plaintiffs have pled sufficient facts to support its claim*

Plaintiffs have also pled sufficient facts to support their claim of defamation. In support of their motion to dismiss for failure to state a claim, Defendants rely on *Tyson v. L'Eggs Prods., Inc.*, 84 N.C. App. 1, 13, 351 S.E.2d 834, 841 (1987) and *Nguyen v. Taylor*, 200 N.C. App. 387, 684 S.E.2d 470 (2009) to erroneously assert
5

that Plaintiffs' claim is one for libel *per quod*. In so doing, Defendants' assert that Plaintiffs' claim should be dismissed because Plaintiffs fail to specifically allege and prove special damages. Defendants' are attempting to rewrite the Plaintiffs' Complaint to tailor-fit its *per quod* argument.

In North Carolina, in order to state a claim for defamation, a plaintiff must allege that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation. *Tyson*, 84 N.C. App. at 10-11. North Carolina courts recognize three classes of libel: (1) publications which are obviously defamatory, termed libel *per se*; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium, and explanatory circumstances, termed libel *per quod*. *Id.* at 11. As it relates to the second class, "it is for the jury to determine which of the two was intended and so understood by those to whom it was addressed or by whom it was heard." *Taylor*, 200 N.C. App. at 392.

In this case, Plaintiffs allege that Defendants defamed Plaintiffs, both in its intercom statement to the airplane passengers, and in its written statement. Specifically, Plaintiffs' Complaint alleges that Defendants' intercom statement that Plaintiffs were a "rude passenger," and its written statement, in part, that contained

6

a false narrative and stated that Plaintiffs were "disruptive," defamed Plaintiffs. (Doc- 1 at 30, 32). Such statements are susceptible of two meanings or reasonable interpretations.[1] *See Tyson*, 84 N.C. App. at 11. Additionally, Plaintiffs allege that Defendants published the defamatory written statement by circulating it through multiple social media platforms, news outlets, and the world wide web, satisfying the second element. (*Id.* at 30). Finally, Plaintiffs allege that Plaintiffs were humiliated, embarrassed, and suffered a tarnished reputation due to Defendants' knowingly disseminating the false statement surrounding the Plaintiffs' removal from the airplane, namely that she was rude and disruptive. (*Id.* at 31-33). Accordingly, such allegations are plausible on its face and, when accepted as true, show that Plaintiffs are entitled to relief. *See Twombly*, 550 U.S. at 557; *Igbal*, 556 U.S. at 678.

> 3. **Defendant's Motion to Dismiss should be denied as it relates to Plaintiffs' negligence claim because Plaintiffs have pled sufficient facts as to Defendants' breach of duty and damages**

Plaintiffs have also pled sufficient facts to support their claim of negligence. "A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't*, LLC, 124 Nev. 213, 216, 180 P.3d 1172, 1174 (2008).

---

[1] Although Plaintiffs have not alleged in their Complaint, that the Defendants' statements are susceptible of two meanings, Plaintiffs will file an amended complaint.

7

Defendants assert that Plaintiffs' claim fails because Plaintiffs failed to "identify any rules or regulations related to the removal of bio-waste or vomit," and failed to allege actual damages suffered by Plaintiffs. (Doc- 14 at 8). While Plaintiffs are not required to identify any rule or regulation at this stage in the proceedings, Nevada law has long held that "a common carrier owes a heightened duty of care to its passengers, at least for transportation-related risks." First Transit, Inc. v. Chernikoff, 445 P.3d 1253, 1256 (Nev. 2019). The Restatement (Second) of Torts, § 314A provides that:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them against unreasonable risk of physical harm, and
>
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

As an air carrier, Frontier has a duty "*to provide service with the highest possible degree of safety in the public interest*." 49 U.S.C. § 44701(d)(l)(A) (emphasis added). *In the Matter of TWA*, the Federal Aviation Administration ("FAA") opined:

> By holding air carriers responsible for violations committed by their employees, the public is assured that air carriers will do everything in their power to ensure that their employees comply with the security and

safety regulations. No one is in a better position to bring pressure to bear on air carrier employees to comply with the regulations than the air carriers themselves. For these reasons, permitting TWA and other air carriers to transfer away their crucial safety and security responsibilities would be contrary to the public interest.[2]

FAA Order No. 1999-12 at 9 (October 7, 1999)

Further, it is well established that air carriers are responsible for regulatory violations committed by their employees while acting within the scope of their employment. *In the Matter of Alika Aviation*, FAA Order No. 1999-14 at 13 (December 22, 1999); In the Matter of TWA, FAA Order No. 1999-12 at 8 (October 7, 1999); *In the Matter of TWA*, FAA Order No. 1998-11 at 26 (June 16, 1998); *In the Matter of Horizon Air*, FAA Order No. 1996-24 at 5-6, 12 (August 13, 1996); *In the Matter of WestAir Commuter Airlines*, FAA Order No. 1993-18 at 9 (June 10, 1993); *In the Matter of USAir*, FAA Order No. 92-48 at 3 (December 21, 1992). As aforementioned, Air carriers have a statutory mandate to perform their services with the highest possible standard of care, and their responsibilities are too critical to permit them to transfer their obligations to another. *In the Matter of TWA*, FAA Order No. 1999-12 at 9 (October 7, 1999) (citing *In the Matter of WestAir Commuter Airlines*, FAA Order No. 1996-16 at 6-7 (May 3, 1996)). An air carrier's duty of care is non-delegable. *In

---

[2] As alleged in Plaintiff's Complaint, after Plaintiff's arrest, an announcement was made that the Flight 2066 would continue to be delayed due a biohazard being on the plane. Notably, the delay was about an hour so that cleaning personnel could board the plane and dispose of the same bio waste that Plaintiff complained about to Jane Doe-1. (Doc- 1 at 21).

9

*the Matter of TWA*, FAA Order No. 1999-12 at 9 (October 7, 1999) (citing *In the Matter of USAir*, FAA Order No. 1992-70 at 3-4 (December 12, 1992)). Finally, to the extent the Court agrees with the Defendant that Plaintiff must "identify any rules or regulations related to the removal of bio-waste or vomit, it has been well established under the International Health Regulations (2005), Competent Authority (Airlines) must ensure, to the extent practicable, that traveler facilities at their international airports and on aircraft are kept free of sources of infection and contamination. In addition, capacity to adopt control measures, such as cleaning and disinfection, should be in place, with oversight by the competent authority, to prevent the spread of disease and its agents at airports and on aircraft.

Here, Plaintiffs alleged in their Complaint that Defendants owed a duty, as a common carrier, to ensure the safety of all passengers aboard the aircraft, which included taking swift action to remove bio-waste aboard its aircraft. (Doc-1 at 35). Plaintiffs further alleged that Defendants breached this duty when it failed to remove the bio-waste from its aircraft. (*Id.* at 36). Moreover, Plaintiffs alleged that Defendants' breach caused Plaintiffs substantial harm, including be exposed to bio-waste with potential unknown blood or airborne pathogens. Further, Plaintiffs' Complaint demanded fifty-five million dollars. (*Id.* at 19). Accordingly, Plaintiffs' Complaint sufficiently plead facts that are "plausible on its face" to support their negligence claim. *See Iqbal*, 556 U.S. 662 at 678 ("[T]o survive a motion to dismiss,

10

a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"); *Turner*, 124 Nev. at 216.

### 4. This Court should deny Defendants' motion to dismiss as it relates to Plaintiffs' gross negligence claim because Plaintiffs have pled sufficient facts to support its claim

Plaintiffs have pled sufficient facts to support their claim of gross negligence. Like its argument for negligence, Defendants contend that Plaintiffs' Complaint for gross negligence fails to allege the elements of breach and damages. It also asserts that Plaintiffs' allegations "do not show any acts of an aggravated character in any sense to rise to the level of gross negligence." (Doc-14 at 10).

"Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence." *Bearden v. Boulder City*, 89 Nev. 106, 109, 507 P.2d 1034, 1035-1036 (1973). It is "equivalent to the failure to exercise even a slight degree of care." *Id.* Gross negligence "is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care." *Id.* Gross negligence is characterized as "very great negligence, or the absence of slight diligence, or the want of even scant care," and "amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected." *Id.* "Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a

11

prudent man." *Bearden v. Boulder City*, 89 Nev. 106, 109, 507 P.2d 1034, 1035-1036 (1973).

As explained above, Plaintiffs' Complaint sufficiently pled facts as to "breach" and "damages" to withstand a motion to dismiss. As to the heightened standard for gross negligence, Plaintiffs' Complaint alleges that Defendants failed to take immediate action to remove the bio-waste when it became aware of the vomit. (Doc- 1 at 39). Instead, Defendants egregiously told the Plaintiffs to clean up the vomit, which potentially contained blood or airborne pathogens, themselves. (*Id.*). In refusing to clean the bio-waste after having knowledge of it, Plaintiffs' facts sufficiently allege that Defendants failed to exercise even the "slight[est] degree of care" to support its gross negligence claim. *See Bearden*, 89 Nev. at 109.

### 5. ***Defendant's Motion to Dismiss should be denied as it relates to Plaintiffs' intentional infliction of emotional distress claim because Plaintiffs have pled sufficient facts as to Defendants' breach of duty and damages***

Plaintiffs have pled sufficient facts to support their claim of intentional infliction of emotional distress. Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress should be dismissed for failure to state a claim because the alleged Defendant's conduct of does not rise to the level of "extreme and outrageous," and that there was not allegation that it intended to, or had reckless disregard, to inflict emotional distress. (Doc-14 at 12). Defendants

12

Case 1:19-cv-00808-LCB-JLW Document 15 Filed 12/26/19 Page 12 of 18

further argue that Plaintiffs allegations contain no "details" as to the distress Plaintiffs suffered or the severity if the emotional distress to support the elements of severe emotional distress and causation. (*Id.* at 12-13).

To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998).

Contrary to Defendants' assertions, Plaintiffs' Complaint alleged that Defendants' conduct in removing Plaintiffs from a flight because Ms. Swinney refused to clean, and refused to allow her daughter to clean, another person's vomit, was extreme and outrageous. (Doc-1 at 43). Plaintiff's Complaint also alleged that Defendants were aware of that its conduct could or, with a high probability, would, cause severe emotional distress Plaintiffs severe emotional distress, evidencing Defendants intent or reckless disregard for causing Plaintiffs' emotional distress.

Additionally, Plaintiffs' Complaint alleges that Plaintiffs suffered severe and emotion distress as a result of Defendants' conduct. (Doc-1 at 45). Plaintiffs' Complaint alleged that Ms. Swinney became "extremely emotional" after being removed from the airplane, and that Plaintiffs now suffer from severe mental

13

anguish, humiliation, and embarrassment. (*Id.* at 20, 26). Moreover, Plaintiffs' Complaint alleges that Plaintiffs have suffered emotional distress after being subjected to a well-being visit from North Carolina Child Protection Services. (*Id.* at 26). Furthermore, Ms. Swinney has suffered from hair loss as a result of stress from this incident.[3] Finally, such allegations, accepted as true at this stage, "state a claim to relief that is plausible on its face" to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

> **6. This Court should deny Defendants' motion to dismiss as it relates to Plaintiffs' negligent infliction of emotional distress claim because Plaintiffs have pled sufficient facts to support its claim**

Plaintiffs have pled sufficient facts to support their claim of negligent infliction of emotional distress. Defendants assert that Plaintiffs have not properly alleged negligence to support it claim for negligent infliction of emotional distress, and have not properly pled facts establishing either a physical impact or serious emotional distress causing physical injury or illness. (Doc -14 at 13-14).

To state a claim for negligent infliction of emotional distress, a plaintiff must allege either a physical impact, or, in the absence of physical impact, proof of "serious emotional distress" causing physical injury or illness. *Barmettler*, 114 Nev. at 448.

---

[3] Although Plaintiffs have not alleged Ms. Swinney's hair loss in their Complaint, Plaintiffs will file an amended complaint.

14

As explained above, Plaintiffs' allegations are sufficient to support its claim for negligence. In addition, Ms. Swinney's subsequent hair loss is sufficient to show the physical impact or physical injury resulting from the serious emotional distress that Ms. Swinney suffers.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss for failure to state a claim should be dismissed. At this stage of the proceedings, Plaintiffs have pled sufficient facts that when accepted as true, "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, and shows that Plaintiffs are entitled to relief." *Twombly,* 550b U.S. at 557.

This 26th day of December 2019.

/s/Harry M Daniels
Harry M. Daniels
Georgia Bar No. 234158

Robert D. James
Georgia Bar No.: 389148

DANIELS & JAMES, LLC

233 Peachtree Street, N.E.
Suite 1200
Atlanta, Georgia 30303
Telephone: (678) 664 -8529
Facsimile: (800) 867-5248
daniels@danielsjameslaw.com
robert@danielsjameslaw.com

*Attorneys for Rosetta Swinney by Special Appearance*

                                                                             Julian M. Hall
                                                                             North Carolina Bar No.: 43398

Julian M. Hall
The Law Office of Julian M. Hall
817 N Mangum Street
Durham, NC 27701
Tel. (919) 530-1130
Fax. (919) 530-1131
Julianmhall01@gmail.com

*Attorney for Rosetta Swinney admitted in this District*

And

                                                                             Sharika M. Robinson
                                                                             North Carolina Bar No.: 44750

Sharika M. Robinson
The Law Offices of Sharika M. Robinson, PLLC
10230 Berkeley Place Drive
Charlotte, NC 28262
Tel. 704.561.6771
Fax. 704.561.6773
srobinson@sharikamrobinsonlaw.com

*Attorney for Rosetta Swinney admitted in this District*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the word limits of Local Civil Rule 7.3(d) because, excluding the parts exempted by the rule, the brief contains 3,688 words.

    Respectfully submitted,

*/s/ Harry M. Daniels*
Harry M. Daniels

17

Case 1:19-cv-00808-LCB-JLW   Document 15   Filed 12/26/19   Page 17 of 18

CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of Court using the court's CM/ECF system, which will send electronic notice to all counsel of record, as follows:

>Robert J. Morris
>SMITH ANDERSON BLOUNT DORSETT
>MITCHELL & JERNIGAN, LLP
>2300 Wells Fargo Capitol Center
>150 Fayetteville Street
>Raleigh, North Carolina 27601
>Telephone: (919) 821-1220
>jmorris@smithlaw.com

>Brian T. Maye
>ADLER MURPHY &MCQUILLEN LLP
>20 South Clark Street, Suite 2500
>Chicago, IL 60603
>Telephone: (312) 422-5713
>bmaye@amm-law.com

This 26th day of December 2019.

>*/s/ Harry M. Daniels*
>Harry M. Daniels