IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROSETTA SWINNEY, an individual and legal guardian and next of friend to J.S., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19-cv-808 |
| FRONTIER AIRLINES, INC.; ABC CORPORATION 1–5; JANE DOE and JOHN DOE 1–10, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Rosetta Swinney, brings this action on behalf of herself and her minor daughter, J.S., against Frontier Airlines and certain of its employees ("Frontier" or "Defendants"). (ECF No. 1.) The complaint alleges damages arising from an incident that occurred when Plaintiff and J.S. ("the family") boarded the airlines for a return trip to Raleigh, North Carolina from Las Vegas, Nevada. (*See id.* ¶ 1.) Before the Court are Frontier's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 13), and Plaintiff's Motion for Leave to File an Amended Complaint, (ECF No. 17). For the reasons that follow, both motions will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff and her fourteen-year-old daughter, J.S., are residents of Durham, North Carolina. (*See* ECF No. 1 ¶¶ 1, 3.) On April 19, 2019, the family arrived at Las Vegas's McCarran International Airport ("LAS") to take Frontier Airlines' Flight 2066 to return to their home in North Carolina. (*Id.* ¶¶ 1, 9–10.) Upon boarding the plane, J.S. attempted to stow her carry-on bag beneath the seat in front of her. (*Id.* ¶ 12.) Finding she had too little room to place her bag there, J.S. tried to move the bag into an overhead compartment. (*Id.*) She then felt and smelled a liquid on her hands and informed her mother that she believed she had a stranger's vomit on her hands. (*See id.* ¶ 13.) "Plaintiff and J.S. then noticed that the floor was covered in vomit where [J.S.'s] carry-on bag had been placed, [and that] vomit was on J.S.'s seatback tray and inside of [her] seat pocket." (*Id.*)

Plaintiff summoned a flight attendant ("Jane Doe-1") and apprised the attendant of the situation. (*Id.* ¶ 14.) Jane Doe-1 left, returning with "Clorox wipes and rubber gloves so that Plaintiff and [J.S.] could clean the vomit." (*Id.* ¶ 15.) When Plaintiff asked if J.S. could have some napkins for her hands, Jane Doe-1 refused, stating "it's better than nothing." (*Id.*) Plaintiff then directed J.S. to move into the aisle so Jane Doe-1 could clean the seat, but Jane Doe-1 responded that "it was not her job" to clean the mess. (*Id.*) After shrugging off another passenger's inquiry as to whose job that might be, Jane Doe-1 returned to the front of the plane. (*Id.*) After waiting in vain "for someone to return and address the vomit issue," Plaintiff walked up to speak with Jane Doe-1 and asked for her name and to speak with her supervisor. (*Id.* ¶ 16.) The flight attendant declined to reveal her name, having allegedly already determined that Plaintiff "was not flying on Flight 2066 'no matter what.'" (*Id.*)

Case 1:19-cv-00808-LCB-JLW   Document 20   Filed 07/09/20   Page 2 of 21

Plaintiff then decided to relocate the family to two empty seats. (*Id.* ¶ 17.) At that point, an unidentified Frontier employee boarded and directed the family off the plane. (*See id.*) When Plaintiff refused to disembark on the grounds that she had done nothing wrong, Frontier called local law enforcement, who boarded and "reiterated to Plaintiff that Frontier wanted Plaintiff and [J.S.] off their plane." (*See id.* ¶¶ 17–18, 24.) When Plaintiff once again refused to disembark, the officers directed all the other passengers off the plane. (*Id.* ¶¶ 18–19.) Frontier then "falsely stated over the plane's intercom that 'because of one rude passenger,'" everyone had to deplane. (*Id.* ¶ 19.)

Plaintiff eventually deplaned, reached the gate, and was handcuffed and arrested for trespassing, despite the fact that by several passengers' accounts, Plaintiff was never "rude, irate[,] or confrontational" on the plane, even in the face of Jane Doe-1's "extremely rude" behavior. (*Id.* ¶¶ 20, 22–23.) Following Plaintiff's arrest, J.S. was temporarily placed in the custody of Nevada's Child Protective Services. (*See id.* ¶¶ 1, 20.) A few days later, Frontier released the following allegedly false message "on multiple social media platforms, news outlets, and across the world-wide web":

> During boarding of flight 2066 from [LAS] to Raleigh-Durham International Airport (RDU) last week, two passengers told the flight attendants that vomit was present in their seat area. The flight attendants apologized and immediately invited the mother and her teenage daughter to move to either end of the plane so that the seat area could be cleaned. The mother and daughter were also told that once boarding was complete[,] they would be provided other seats if available. The daughter was also offered cleaning products and invited to use the lavatory to wash up. The mother was unsatisfied with the response and became disruptive. As a result, the flight attendants determined that the mother and daughter should be deplaned and accommodated on another flight. The mother refused, and following procedure, law enforcement was called. Law enforcement then requested that everyone deplane so that the mother and daughter could be removed allowing the aircraft to be re-boarded and depart.

3

We apologize to our passengers for the inconvenience caused by the departure delay. The safety of passengers and crew is our top priority at Frontier.

(*Id.* ¶¶ 24–26.)

Plaintiff now alleges that the family has "suffered severe mental anguish[ ] and emotional distress" from this incident. (*See id.* ¶ 26.) Specifically, Plaintiff and J.S. feel humiliated and believe their reputations have been sullied. (*Id.*) Further, because "Plaintiff and her daughter were subject to a well-being visit from North Carolina Child Protect[ive] Service[s] upon their return to North Carolina," Plaintiff "now feels as though her and her child [are] part of the 'system.'" (*Id.*)

Plaintiff filed her complaint on August 8, 2019, seeking over fifty-five million dollars in damages and asserting six tort claims against Defendants: (1) abuse of process; (2) defamation; (3) negligence; (4) gross negligence; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. (*See id.* at 12–20.) Frontier moved to dismiss Plaintiff's complaint for failure to state a claim on December 6, 2019. (ECF No. 13.) Plaintiff filed her response to Defendants' motion on December 26 and later moved to amend her complaint on January 19, 2020. (ECF Nos. 15; 17.) While Plaintiff's proposed amended complaint asserts the same claims and pursues the same damages as Plaintiff's original complaint, it also seeks to add additional factual allegations. (*See* ECF No. 17-1.) The Court will now consider Frontier's Motion to Dismiss each of Plaintiff's claims and whether Plaintiff's complaint or proposed amended complaint will allow it to survive Frontier's motion or whether the Court allowing Plaintiff to amend her complaint would be futile.[1]

---

[1] The Court notes that Plaintiff and her counsel failed to file any substantive briefing in support of Plaintiff's Motion to Amend and failed to reply to Frontier's response opposing Plaintiff's motion.

4

## II.  STANDARDS OF REVIEW

### A.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

### B.  Rule 15(a)

The determination of whether to grant or deny a motion to amend a pleading lies within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).  Under Rule 15(a) of the Federal Rules of Civil Procedure, courts should freely grant leave to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This liberal rule gives effect to the federal policy in favor of resolving cases on

5

their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

A plaintiff's request to amend a complaint is futile if the proposed amended complaint could not satisfy the appropriate requirements of the Federal Rules of Civil Procedure, to include Rule 12(b)(6). *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## III.   DISCUSSION

As stated above, Plaintiff brings six tort claims against Defendants. Before evaluating the merits of each claim, as a threshold matter, the Court must determine the substantive law that governs each claim. Frontier argues that North Carolina law should govern Plaintiff's defamation claim and that Nevada law should govern the remaining claims. (ECF No. 14 at 4.) Plaintiff states only that she "does not concede" that Nevada law should govern her non-defamation claims. (ECF No. 15 at 3.)

As a federal court sitting in diversity, this Court is bound to apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "In tort actions, North Carolina courts adhere to the rule of lex loci and apply the substantive laws of the state in which the injuries were sustained." *Johnson v. Holiday Inn of Am., Inc.*, 895 F. Supp. 97, 98 (M.D.N.C. 1995); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988) ("This Court has consistently adhered to the lex loci rule in tort actions."). Thus, to determine what

6

law to apply, the Court must ascertain where Plaintiff's alleged injuries occurred. As Plaintiff alleges that all of Defendants' relevant actions—save for some of their allegedly defamatory statements—occurred in Nevada, the Court will apply Nevada law to Plaintiff's non-defamation claims.

It is less clear what law should govern Plaintiff's defamation claims because Plaintiff alleges that Defendants published their allegedly defamatory statements "on multiple social media platforms, news outlets, and across the world-wide web." (ECF Nos. 1 ¶ 25; 17-1 ¶ 26.) North Carolina courts do not appear to have addressed this specific issue. *See Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, at *4 (E.D.N.C. May 8, 2015). Thus, this Court is obligated to predict how the North Carolina Supreme Court would rule on the matter. *Id.* Like the United States District Court for the Eastern District of North Carolina in *Nobles v. Boyd*, this Court concludes that the North Carolina Supreme Court, consistent with the First Restatement of Conflict of Laws and the principle of lex loci, would likely treat Plaintiff and J.S.'s state of residency as the state where their reputational injury occurred, as that is the place where they are known and thus where the harm to their reputations most likely would have occurred. *See id.* at *4–6; *see also Castro v. Goggins*, No. 1:16CV10, 2016 WL 7217282, at *3 (M.D.N.C. Dec. 12, 2016) (adopting the *Nobles* approach and applying Tennessee law to a Tennessee litigant's defamation claim as his reputational injury "would most likely be centered" in his home state), *adopted* 2017 WL 5749731 (M.D.N.C. Jan. 10, 2016). As Plaintiff and J.S. are residents of North Carolina and North Carolina is the state in which their

Case 1:19-cv-00808-LCB-JLW   Document 20   Filed 07/09/20   Page 7 of 21

reputational injuries were sustained, the Court concludes that North Carolina law governs Plaintiff's defamation claims.[2]

The Court will next examine the merits of each of Plaintiff's claims and whether the claim should be dismissed, or the proposed amendment allowed.

### A. Abuse of Process

Plaintiff's first claim against Defendants is for abuse of process. (ECF Nos. 1 ¶¶ 27–28; 17-1 ¶¶ 30–31.) In Nevada, the elements of an abuse of process claim are: "(1) an ulterior purpose by the party abusing the process other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 356 P.3d 511, 519 (Nev. 2015) (quoting *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002)). Nevada defines an ulterior purpose as "any improper motive underlying the issuance of legal process." *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993).

Plaintiff's complaint alleges that Defendants committed the tort of abuse of process by "misus[ing] law enforcement and or the Transportation Security Administration to remove[ ] Plaintiff and J.S. [from their flight] for Plaintiff's refusal to clean another person's bio-waste." (ECF No. 1 ¶ 28.) Plaintiff further alleges that Defendants' ulterior purpose was to remove Plaintiff and J.S. from their flight. (*Id.*) This claim fails for at least three reasons. First, despite Plaintiff's summary contention that Defendants "misused law enforcement," (*id.*), summoning

---

[2] There is nothing in the record to indicate that Plaintiff and J.S. have any national or international presence of the kind that might complicate the question of where they are best known and thus most harmed by defamation. *See Nobles*, 2015 WL 2165962, at *5–6 (applying California law where plaintiff was known internationally but best known in California).

law enforcement to assist parties in resolving a dispute can hardly be considered a willful act not proper in the regular conduct of a legal proceeding. Indeed, calling the police to help resolve tense situations is a regular and often desirable act, particularly in the potentially fraught context of interstate air travel. Second, a claim for abuse of process requires the "willful act in the use of legal process not proper in the regular conduct of the proceeding" to utilize the *judicial* process, "as the tort protects the integrity of the court." *Land Baron Invs.*, 356 P.3d at 519. Here, while Defendants summoned law enforcement, no judicial proceeding occurred. Finally, Defendants' allegedly improper motive, removing the family from the flight, was not ulterior at all—it was Defendants' express goal directly aimed at resolving the dispute between the parties that arose when Plaintiff refused to deplane. (*See, e.g.*, ECF No. 1 ¶ 18.) Accordingly, Plaintiff's complaint fails to state a plausible claim of abuse of process.

Further, Plaintiff's request to amend her complaint to state a claim for abuse of process must be denied as futile as her proposed amended claim fails for the same reasons as her original claim. Plaintiff's proposed amended claim is nearly identical to her original claim and adds no new facts to make her claim plausible. (*Compare* ECF No. 1 ¶ 28, *with* ECF No. 17-1 ¶ 31.) Accordingly, Plaintiff's motion to amend is denied insofar as she seeks to state a claim for abuse of process and Plaintiff's claim of abuse of process must be dismissed.

### B. Defamation

Plaintiff's second claim—or set of claims—is for defamation. (*See* ECF Nos. 1 ¶¶ 29–33; 17-1 ¶¶ 32–39.) Plaintiff's defamation claims center around two statements: Defendants' remark that everyone needed to deplane "because of one rude passenger" and Defendants' more extensive written statement after the incident that, among other things, accused Plaintiff

of being "disruptive." (*See* ECF Nos. 1 ¶¶ 30, 32; 17-1 ¶¶ 33, 35.) Frontier moves to dismiss Plaintiff's defamation claims in part on the grounds that she does not allege sufficient facts to support her claims and, in particular, for her failure to allege special damages. (*See* ECF No. 14 at 6–7.)

"In order to state a claim for defamation, a plaintiff must allege that the defendant made a false statement of or concerning a plaintiff; communicated the statement to some person or persons other than the plaintiff; and that the plaintiff was damaged." *Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004). "North Carolina retains two distinct defamation torts—slander, which involves spoken words, and libel, which involves written words." *Id.* Moreover, because North Carolina recognizes two types of slander and an additional three types of libel, Plaintiff's failure to specifically state what type of defamation claims she is asserting necessitates an additional background discussion that likely would not have been necessary had Plaintiff more clearly stated what claims she was attempting to assert.

   *i.*   *Slander*

North Carolina law recognizes two types of slander: "slander *per se* and slander *per quod*." *Donovan v. Fiumara*, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994). "Slander *per se* is a false oral communication that amounts to (1) an accusation the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease." *Eli Research Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004). Unlike slander *per se*, slander *per quod* "involves a spoken statement of which the harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear 'only in consequence

10

of extrinsic, explanatory facts showing its injurious effect.'" *Donovan*, 442 S.E.2d at 574 (quoting *Badame v. Lampke*, 89 S.E.2d 466, 467–68 (N.C. 1955)). To state a claim for slander *per quod*, a plaintiff must plead "the injurious character of the words" as well as "special damage[s]." *See Izydore v. Alade*, 775 S.E.2d 341, 349 (N.C. Ct. App. 2015).

    *ii. Libel*

  "Three classes of libel are recognized under North Carolina law." *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405, 408 (N.C. 1984). The first type of libel is libel *per se*. *Id.* Much like slander *per se*, libel *per se* "includes any written publication that (1) charges that a person has committed an infamous crime, (2) charges a person with having an infectious disease, (3) tends to impeach a person in that person's trade or profession, or (4) otherwise tends to subject one to ridicule, contempt, or disgrace." *Eli*, 312 F. Supp. 2d at 761. The second type of libel has no direct analogue in slander and involves "publications susceptible of two interpretations one of which is defamatory and the other not." *Renwick*, 312 S.E.2d at 408 (quoting *Arnold v. Sharpe*, 251 S.E.2d 452, 455 (N.C. 1979)). To state such a claim, a complaint must allege that the publication is "susceptible of two meanings, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom publication was made." *See id.* The final type of libel, libel *per quod*, like slander *per quod*, involves publications whose defamatory characters appear "only in connection with extrinsic, explanatory facts." *Eli*, 312 F. Supp. 2d at 761. To state a claim for libel *per quod*, a party must allege special damages for each plaintiff. *Nguyen v. Taylor*, 684 S.E.2d 470, 475 (N.C. Ct. App. 2009).

iii.    *Plaintiff's allegations*

Here, while Plaintiff does not appear to have asserted a claim for slander or libel *per se*,[3]

she does appear to attempt to allege claims for slander and libel *per quod* and for the second

class of libel.[4]  (*See* ECF Nos. 1 ¶¶ 29–33; 17-1 ¶¶ 32–39.)

As Frontier argues, Plaintiff's complaint fails to state a claim for slander or libel *per quod*

because it does not allege any special damages.  (ECF No. 14 at 7.)  "North Carolina courts

have routinely held that a pecuniary loss is a prerequisite for special damages to be alleged,"

*Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582, 599 (W.D.N.C. 2013), and Plaintiff's

complaint fails to allege any pecuniary loss from Defendants' defamatory statements, (*see* ECF

No. 1 ¶ 31).  However, Plaintiff's proposed amended complaint rectifies this shortcoming by

alleging that the family incurred medical expenses as a result of Defendants' statements.  (ECF

No. 17-1 ¶¶ 38–39.)  Under North Carolina law, such allegations of medical payments to

support treatment for emotional distress suffice to allege special damages.  *See Araya*, 966 F.

Supp. 2d at 600.  Further, Plaintiff's proposed amended complaint adequately alleges that

Defendants' statements, though not defamatory *per se*, were of a harmful character in context,

in that Defendants characterized Plaintiff as "rude" and "disruptive," and stated that she was

---

[3] To the extent Plaintiff's proposed amended complaint advances a libel *per se* claim on the grounds that Defendants accused Plaintiff of disorderly conduct, (*see* ECF No. 17-1 ¶ 39), that claim fails because disorderly conduct is not a crime of moral turpitude, *see, e.g.*, *Jones v. Brinkley*, 93 S.E. 372, 373 (N.C. 1917) (defining a crime of moral turpitude as an act of "baseness, vileness or depravity in the private and social duties that a man owes to his fellowman or to society in general" (citation omitted)).

[4] In her response brief in opposition to Frontier's Motion to Dismiss, Plaintiff denied that she was bringing a libel *per quod* claim; however, Plaintiff's proposed amendments add allegations for special damages, indicating to the Court that Plaintiff likely wishes to allege a *per quod* claim.  (*See* ECF Nos. 15 at 5–6; 17-1 ¶ 38.)

to blame for the flight being delayed. (*See* ECF No. 17-1 ¶¶ 18, 25.) Thus, Plaintiff's proposed amended complaint states plausible claims for slander and libel *per quod*.

Plaintiff's complaint and proposed amended complaint do not, however, state a claim for the second class of libel—those statements "susceptible of two meanings, one defamatory," made intentionally by a publisher and understood to be defamatory by the listener, *see Renwick*, 312 S.E.2d at 408—because they do not plausibly plead that the allegedly defamatory statements were susceptible of two meanings. Plaintiff's proposed amended complaint merely offers the legal conclusion that the statements were "susceptible of two reasonable interpretations, one of which is defamatory," without ever pleading facts explaining what those two meanings were, and Plaintiff's original complaint lacks even this conclusory statement. (*See* ECF Nos. 1 ¶¶ 29–33; 17-1 ¶ 39.) As legal conclusions are insufficient to plausibly state a claim, *Iqbal*, 556 U.S. at 678, Plaintiff's effort to state a claim for the second class of libel fails, s*ee Renwick*, 312 S.E.2d at 408 (holding that a plaintiff's complaints failed to bring an editorial "within the second class of libel [because] it was not alleged that the editorial [was] susceptible of two meanings, one defamatory"); *Pierce v. Atl. Grp., Inc.*, 724 S.E.2d 568, 579 (N.C. Ct. App. 2012) ("We further believe [p]laintiff's complaint is insufficient to state a claim for defamation within the second class because the complaint does not allege that the email or report are susceptible of two meanings.").

In conclusion, Frontier's Motion to Dismiss must be granted to the extent Plaintiff seeks to make any type of defamation claim other than claims for slander and libel *per quod,* and Plaintiff's Motion to Amend must be granted to the extent that the proposed amended complaint alleges plausible claims for slander and libel *per quod.*

13

## C. Negligence

Plaintiff's complaint next asserts a claim for negligence. (ECF Nos. 1 ¶¶ 34–37; 17-1 ¶¶ 40–44.) "In Nevada, to state a claim on a traditional negligence theory a plaintiff must allege that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages." *Suckow v. Medtronic, Inc.*, 971 F. Supp. 2d 1042, 1047 (D. Nev. 2013). Common carriers in Nevada owe a heightened duty of care toward their passengers for transportation risks and a duty of reasonable care to their passengers for all non-transportation risks. *First Transit, Inc. v. Chernikoff*, 445 P.3d 1253, 1255 (Nev. 2019).

Here, Plaintiff's complaint alleges that Defendants owed Plaintiff and J.S. a duty of care as a common carrier, that Defendants "breached their duty of care by failing to adhere to well established rules and regulations [related to] the removal of bio-waste," and that "[a]s a result of Defendants' negligence[,] Plaintiff and J.S. w[ere] substantial[ly] harmed." (ECF No. 1 ¶ 35–37.) Specifically, Plaintiff's complaint alleges that as a result of Defendants' negligence, "Plaintiff, J.S.[,] and all other passengers were . . . exposed to . . . bio-waste with a potential unknown blood or airborne pathogens," and that "J.S.'s skin was directly exposed to the bio-waste." (*Id.* ¶ 37.) Plaintiff's proposed amended complaint makes substantially the same allegations, though it adds additional details concerning Frontier's alleged statutory and regulatory obligations. (*See* ECF No. 17-1 ¶¶ 40–44.)

Frontier argues that Plaintiff's original complaint failed to state a claim for negligence for two reasons. (ECF No. 14 at 8–9.) First, Frontier asserts that Plaintiff's complaint failed to allege a breach of duty. (*Id.* at 8.) Second, Frontier contends that Plaintiff's complaint failed

to allege damages. (*Id.* at 8–9.) However, in opposing Plaintiff's proposed amended complaint, Frontier appears to concede—and the Court finds—that Plaintiff's proposed amended complaint adequately alleges a breach of duty. (*See* ECF No. 18 at 3–4 (arguing only that Plaintiff's proposed amended complaint fails to adequately allege damages).) Frontier persists, however, in arguing that Plaintiff's proposed amended complaint fails to allege damages because, in Frontier's view, Plaintiff has only claimed that the family was exposed to vomit and "being exposed to a substance that does not cause a physical injury is not the equivalent of actually suffering a physical injury." (*Id.* at 4.) Frontier cites no authority for its proposition that mere exposure to a noxious substance does not amount to tortious damage under Nevada law, and the Court has found no such authority. However, even if that were the law, Plaintiff's proposed amended complaint *does* allege damages beyond mere exposure from Defendants' failure to clean the vomit—it merely does so in another portion of Plaintiff's proposed amended complaint. (*See* ECF No. 17-1 ¶¶ 57–58, 60.) In discussing her negligent infliction of emotional distress claim, Plaintiff alleges that as a result of Defendants' negligent failure to clean the vomit, Plaintiff and J.S. suffered "severe emotional distress." (*See id.*) Thus, the Court concludes that Plaintiff's proposed amended complaint plausibly alleges duty, breach, causation, and damages. Accordingly, Frontier's motion to dismiss Plaintiff's negligence claim is denied and Plaintiff's motion to amend is granted as to her negligence claim.

### D. Gross Negligence

Plaintiff's next claim is for gross negligence. (ECF Nos. 1 ¶¶ 38–41; 17-1 ¶¶ 45–49.) "A claim for *gross* negligence is separate from a negligence claim." *Garcia v. Las Vegas Metro.*

*Police Dep't*, No. 2:17-cv-02504-APG-PAL, 2019 WL 845853, at *7 (D. Nev. Feb. 20, 2019). "For gross negligence, a plaintiff must establish that the defendant failed to exercise even the slightest degree of care in his conduct." *Id.*; *see also Bearden v. City of Boulder City*, 507 P.2d 1034, 1035–36 (Nev. 1973) (defining gross negligence as negligence "substantially and appreciably higher in magnitude and more culpable than ordinary negligence" that still stops short of being willful or intentional wrongdoing).

Plaintiff's gross negligence claim, as alleged in her original complaint and in her proposed amended complaint, asserts that "Defendants knowingly and recklessly disregarded the safety of Plaintiff, J.S. and all other passengers . . . by failing to take immediate action to remove bio-waste" from the plane after they became aware of it. (*See* ECF Nos. 1 ¶ 39; 17-1 ¶¶ 46–49.) Frontier argues that Plaintiff has failed to allege facts showing damages and has failed to allege that Defendants acted in a grossly negligent manner. (ECF Nos. 14 at 9–10; 18 at 3–4.) For the reasons explained above, Plaintiff's allegation that Defendants' negligent conduct resulted in severe emotional harm to the family suffices to show damages. However, both the original and proposed complaint fail to allege facts rising to the level of *gross* negligence because Plaintiff's pleadings show that Frontier's employees took some steps directed toward removing the vomit from the plane, though such steps may have been inadequate. Specifically, both documents allege that while a flight attendant rudely refused to clean up a stranger's vomit before takeoff, the attendant also provided the family with Clorox wipes and rubber gloves so that they could clean the mess. (ECF Nos. 1 ¶ 15; 17-1 ¶ 14.) Inadequate though this response may have been, the Court agrees with Frontier that by providing the family with some cleaning supplies, Jane Doe-1 exhibited at least some degree

16

of care, not the absence of even the slightest degree of care required for gross negligence.  (*See* ECF No. 14 at 10.)  Frontier's motion to dismiss is therefore granted as to Plaintiff's gross negligence claim and the Court will deny Plaintiff's motion to amend her gross negligence claim.

### E. Intentional Infliction of Emotional Distress

Plaintiff's next claim is for intentional infliction of emotional distress ("IIED").  (ECF No. 1 ¶¶ 42–45; 17-1 ¶¶ 50–55.)  "To state a claim of IIED under Nevada law, [plaintiffs] must allege '(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff[s] having suffered severe or extreme emotional distress and (3) actual or proximate causation.'"  *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 971 (9th Cir. 2017) (quoting *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000)).  "Such conduct must be 'outside all possible bounds of decency' and 'regarded as utterly intolerable in a civilized community.'"  *Id.* (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998)).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not suffice.  *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  It is the Court's duty to determine on a motion to dismiss whether the alleged conduct is sufficiently extreme and outrageous to state a claim.  *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1143 (D. Nev. 2014).  However, "where reasonable people may differ, [a] jury [must] determine[ ] whether the conduct was extreme and outrageous enough to result in liability."  *Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

Case 1:19-cv-00808-LCB-JLW   Document 20   Filed 07/09/20   Page 17 of 21

Here, both Plaintiff's complaint and her proposed amended complaint allege that Defendants' decision to remove "a mother and a child from a flight that the mother had purchased her tickets for because the mother refused to clean another person's vomit and refused to allow her child to clean another person's vomit" was extreme and outrageous. (ECF Nos. 1 ¶ 43; 17-1 ¶ 51.) Assuming Plaintiff's allegations are true, the Court agrees that Defendants behaved poorly, even reprehensibly. It finds, however, that Defendants' actions do not meet the very high threshold of "extreme and outrageous" as defined by Nevada courts. Removing an argumentative customer after a dispute over a mess an airline refused to clean up is not behavior utterly intolerable to a civilized society. In so concluding, the Court is guided by Nevada caselaw illustrating that not all objectively reprehensible conduct will arise to IIED. *See, e.g.*, *Hale v. Cosmopolitan of Las Vegas*, No. 2:19-CV-780 JCM (VCF), 2020 WL 1515327, at *1, 4 (D. Nev. Mar. 30, 2020) (holding that a customer who twice berated a casino dealer in a "rude and aggressive" manner and threatened to have her fired did not engage in extreme and outrageous conduct); *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1024, 1029 (D. Nev. 2013) (dismissing an IIED claim where a plaintiff alleged he was unfairly disciplined, passed over for promotions, and fired because of his national origin and race). The Court is also guided by cases that have addressed broadly similar flight attendant-passenger fact patterns. *See, e.g.*, *Xiaoyun Lu v. AirTran Airways, Inc.*, No. 1:13-CV-1846-CC, 2015 WL 5936934, at *1, 9 (N.D. Ga. Mar. 31, 2015), (holding that an incident where a flight attendant "refused to take any action other than [to] give [an airline passenger] paper towels" after an unknown liquid leaked onto the passenger's face, arms, and lap was "so far removed" from a valid IIED claim that the court could "easily" dismiss it), *aff'd* 631 F. App'x 657 (11th Cir.

2015); *Hill v. U.S. Airways, Inc.*, No. 08-14969, 2009 WL 4250702, at *5 (E.D. Mich. Nov. 25, 2009) (finding that flight attendants who reported an altercation with a passenger to police officers, ultimately causing the passenger to be handcuffed, "simply [did not engage in behavior] sufficiently extreme or outrageous to amount to [IIED]"); *Norman v. Trans World Airlines, Inc.*, No. 98 Civ. 7419(BSJ), 2000 WL 1480367, at *4 (S.D.N.Y. Oct. 6, 2000) (concluding that a flight attendant who "leaned over [a passenger's] seat and said in a low and menacing voice" that the passenger should deplane during a layover and not re-board did not behave in an extreme and outrageous manner); *but see DelVecchia v. Frontier Airlines, Inc.*, No. 2:19-cv-01322-KJD-NJK, 2020 WL 1450581, at *1–2 (D. Nev. Mar. 24, 2020) (holding that a plaintiff stated an IIED claim by alleging that a flight attendant struck him on the head giving him a concussion, separated him from his son mid-flight, and loudly and falsely accused him of sex trafficking). Because Plaintiff has failed to allege sufficiently extreme and outrageous behavior under Nevada law in her original complaint and proposed amended complaint, Frontier's motion to dismiss is granted as to Plaintiff's IIED claim and Plaintiff's motion to amend is denied as to that claim.

### F. Negligent Infliction of Emotional Distress

Plaintiff's final claim—negligent infliction of emotional distress ("NIED")—fails as a matter of law. (*See* ECF Nos. 1 ¶¶ 46–50; 17-1 ¶¶ 56–60.) NIED is a narrow tort triggered "only where the emotional harm is based on observance of a physical injury to another, usually a close relative." *Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925, 934 (D. Nev. 2010); *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999) ("To recover [for NIED], the witness-plaintiff must prove that he or she (1) was located near the scene; (2) was emotionally injured by the

19

contemporaneous sensory observance of the accident; and (3) was closely related to the victim."). Nevada law does not allow direct victims of negligence to recover for NIED. *See, e.g., Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1143 (D. Nev. 2019); *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1279–80 (D. Nev. 2014); *Villagomes v. Lab Corp. of Am.*, 783 F. Supp. 2d 1121, 1126 (D. Nev. 2011).

Here, both Plaintiff's complaint and proposed amended complaint claim that the family suffered severe emotional damage as a result of Defendants' failure to clean up the vomit. (ECF Nos. 1 ¶¶ 48, 50; 17-1 ¶¶ 58, 60.) This claim fails as a matter of law because the family alleges they were direct victims of Defendants' negligence. Frontier's motion to dismiss Plaintiff's NIED claim is therefore granted and Plaintiff's motion to amend is denied as futile as it relates to her NIED claim.

## IV. CONCLUSION

For the reasons stated above, Frontier's Motion to Dismiss and Plaintiff's Motion to Amend must both be granted in part and denied in part. Plaintiff may amend her complaint insofar as she seeks to state claims for slander and libel *per quod* and negligence. However, Frontier's Motion to Dismiss must be granted as to her claims for (1) abuse of process; (2) gross negligence; (3) IIED; (4) NIED; and (5) any other defamation-based claims.

The Court therefore enters the following:

### [ORDER TO FOLLOW]

20

**ORDER**

IT IS THEREFORE ORDERED that Frontier's Motion to Dismiss, (ECF No. 13), is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiff's abuse of process, gross negligence, IIED, and NIED claims and these claims are DISMISSED WITH PREJUDICE. It is DENIED as to Plaintiff's slander and libel *per quod* and negligence claims.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend, (ECF No. 17), is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiff's proposed amendments related to her slander and libel *per quod* and negligence claims as well as all supporting factual allegations. It is DENIED to the extent that Plaintiff seeks to state claims for abuse of process, gross negligence, IIED, and NIED, or any other kind of defamation claim not permitted above.

IT IS FURTHER ORDERED that should Plaintiff choose to continue litigating this action, she must file an amended complaint complying with this Opinion within ten days of the issuance of this Order. This new amended complaint may include only Plaintiff's remaining claims (slander and libel *per quod* and negligence) and supporting factual allegations, as her other claims have been dismissed with prejudice.

This, the 9th day of July 2020.

/s/Loretta C. Biggs
United States District Judge