IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
FILE NUMBER1:19-cv-00808-LCB-JLW

| | |
|---|---|
| **Rosetta Swinney**, an individual and legal guardian and next of friend to **J. S.,** a minor,<br><br>      Plaintiff,<br><br> v.<br><br>**Frontier Airlines, Inc.; ABC Corporation 1-5; Jane Doe and John Doe 1-10**<br><br><br><br>      Defendants. | CIVIL ACTION NO.<br>1:19-cv-00808-LCB-JLW |

<u>FIRST AMENDED COMPLAINT FOR DAMAGES</u>

  Comes now Plaintiff Rosetta Swinney, an individual and legal guardian and next of friend to J.S., a minor, files this Amended Complaint against the above-named Defendants and in support thereof states as follows:

# INTRODUCTION

1.

On April 20, 2019, Rosetta and her fourteen-year-old daughter [hereinafter "J.S."] was forced off Frontier Airline ["Frontier"] Flight 2066 from McCarran International Airport ['LAS'] located in Las Vegas, Nevada to Raleigh-Durham International Airport ["RDU"], after they refused to clean someone else's vomit from a seatback, floor and armrest. Ultimately, Rosetta was arrested and jailed by law enforcement and her child was placed in Nevada's Child Protective Service ["NCPS"] because Rosetta refused to deplane the aircraft even though several seats were available for Rosetta to locate to away from the vomit. Rosetta was involuntarily separated from her child for the first time ever. Rosetta had no control over her child's well-being and was rendered completely helpless as a mother. Rosetta and J.S. suffered and continues to suffer severe mental anguish, emotional distress and physical injuries due to Frontier's deliberate and malicious acts. Further, Rosetta and J.S. suffer from humiliation, embarrassment and a tarnished reputation after Frontier defamed Rosetta's character by knowingly disseminating lies about Rosetta and J.S. removal from Flight 2066. Plaintiffs now seek damages.

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant 28 U.S. Code § 1391, Defendant Frontier Airlines, Inc. has sufficient contacts in this district and events alleged herein arose out of this district.

## PARTIES

3.

Plaintiff Rosetta Swinney ["Plaintiff"] is a citizen of the State of North Carolina, a resident of Durham County, and a resident of the City of Durham, North Carolina and a citizen of the United States of America.

4.

J. S., a minor. Plaintiff brings the matter on the behalf of J.S. as next of friend and legal guardian.

5.

Frontier Airlines, Inc ["Frontier"], is a foreign corporation doing business in North Carolina. Frontier may be served through its registered agent Corporation Services Company at 2625 Glenwood Avenue Suite 550 Raleigh, NC 27608.

6.

ABC Corporation, is an unknown corporation that was responsible for cleaning Flight 2066 prior to Plaintiff and J.S. boarding the aircraft on April 19, 2019. Plaintiff will substitute name once identity is ascertained.

7.

Jane Doe and John Doe 1-10, are unknown agents of Frontier Airlines, Inc. and ABC Corporation, who acts or omission caused injury to Plaintiff and J.S. on April 19- 20. 2019. Plaintiff will substitute name once identity is ascertained.

BACKGROUND FACTS

8.

On April 19, 2019, Plaintiff and her fourteen-year-old daughter J.S., arrived at LAS after attending a wedding in Las Vegas. Plaintiff purchased her roundtrip tickets from RDU to LAS and back to RDU via internet from her home in Durham, North Carolina.

9.

Plaintiff and her J.S. were ticketed passengers for Frontier Airline Frontier Flight 2066 with service from LAS to RDU.

10.

Upon arriving to their departure gate at LAS, it was disclosed to the passengers of Flight 2066, that Flight 2066 would be delayed for approximately twenty minutes due to cleaning of the aircraft.

11.

After the delay, Plaintiff and J.S. boarded the aircraft. Upon reaching their seat location on the aircraft, J.S. placed her carry-on bag under the seat in front of her; however, due to the limited leg room after placing her carry-on bag under the seat in front of her, J.S. decided to relocate her carry-on bag to the overhead compartment.

12.

While attempting to relocate her carry-on bag J.S. felt a liquid substance on her hands. (See Exhibit "A attached to Plaintiff's original complaint) At that time, J.S. smelled the liquid and believed it to be vomit. J.S. then told Plaintiff that she believed the substance was someone's vomit. Plaintiff and J.S. then noticed that the floor was covered in vomit where J.S.' carry-on bag had been placed. Vomit was found on J.S.' seatback tray and inside of the seat pocket.

13.

In response to vomit being all over J.S.' hands, Plaintiff pushed the flight attendant call button to alert a flight attendant to come to her and J.S.' location. Once a flight attendant arrived at their location, Plaintiff informed the flight attendant [hereinafter "Jane Doe-1"] that vomit was on the seat in front of her daughter and vomit had gotten on her child.

14.

Jane Doe-1 left and returned to Plaintiff and her child's location with Clorox wipes and rubber gloves so that Plaintiff and her child could clean the vomit. Plaintiff then asked Jane Doe-1 for some napkins so that her daughter could clean her daughter's hand. Jane Doe #1 refused Plaintiff's request and responded by saying "it's better than nothing." Plaintiff then directed her daughter to come out of the row so Jane Doe-1 could clean the vomit. However, Jane Doe-1 told the Plaintiff "it was not her job." At that time, a passenger seated in the row behind Plaintiff and J.S. asked Jane Doe-1 "then who job was it to clean the vomit?" In response, Jane Doe-1 shrugged her shoulders and walked to the front of the plane.

15.

Plaintiff and her daughter waited for approximately ten minutes for someone to return and address the vomit issue. However, the lack of a response prompted Plaintiff to walked to the front of the plane and ask Jane Doe-1 what was her name and to speak to Jane Doe-1's supervisor. Plaintiff was unable to see Jane Doe-1's name tag because it was covered. Jane Doe-1 then told Plaintiff not worry about her name because she was not flying with them tonight. Unbeknownst to Plaintiff, Jane Doe-1 had already vocalized Plaintiff was not flying on Flight 2066 "no matter what."

16.

Subsequently, Jane Doe-1 represented to Plaintiff to the seat where the vomit was located. However, Plaintiff unilaterally relocated herself and J.S. to some available and unoccupied seats on the aircraft. Subsequently, another individual (hereinafter "Jane Doe-2") boarded the plane and demanded Plaintiff and J.S. to get out of the seats they were sitting in and get off the aircraft. However, Plaintiff refused to deplane the aircraft on the grounds that she and J.S. had done nothing wrong.

17.

Eventually, local law enforcement boarded the plane and informed Plaintiff that Frontier wanted Plaintiff and J.S. off their aircraft. Plaintiff explained to the officers that she did nothing wrong and she had no other way of getting home. Further, Plaintiff informed the officers that vomit was on J.S.' seat and she asked Frontier to clean it or relocated them. The officers sympathized with Plaintiff's circumstances and concerns; however, the officers reiterated to Plaintiff that Frontier wanted Plaintiff and J.S. off their plane. Plaintiff refused to deplane on the grounds that she and J.S. had done nothing wrong.

18.

Due to Plaintiff's refusal to deplane the aircraft, all other passengers were told to deplane the aircraft by law enforcement. Frontier falsely stated over the plane's intercom that "because of one rude passenger we are asking everyone to deplane."

19.

Eventually, Plaintiff deplaned the aircraft. Once Plaintiff and J.S. reached the gate area, Plaintiff was placed under arrested for trespassing. After Plaintiff was handcuffed in the presence of her fellow passengers and J.S., Plaintiff became extremely emotional and outwardly expressed to others that she was getting arrested for refusing to clean another person's "throw up."

20.

After Plaintiff's arrest, Plaintiff was informed by law enforcement that J.S. would be placed in the custody of NCPS. Plaintiff begged law enforcement to allow J.S. to be placed in the custody of Plaintiff's friend who was also present at the airport and a confirmed passenger of Flight 2066 as opposed to being placed in NCPS's custody. However, the Plaintiff's request was denied and J.S. was detained by law enforcement.

21.

While enroot to NCPS, J.S. was questioned by the transporting officers as to whether her mother uses drugs and as to whether her mom abuses her. This line of questing brought significant emotional distress, mental anguished and embarrassment to J.S.

22.

While in NCPS' custody, J.S. was subjected to a mugshot and was required to remove all her clothing to be searched. This was a very humiliating, demeaning and a frightening experience for J.S.

23.

As aforementioned, On April 19-20, 2019, several seats were available on Flight 2066. Plaintiff and her child could have been easily relocated to other seats on the aircraft by Frontier's agents. According to several other passengers' accounts

on Flight 2066, Plaintiff was never rude, irate or confrontational at any time. In fact, Plaintiff stayed calm and spoke in a normal tone. Also, according to several passengers, Jane Doe-1 was extremely rude, unprofessional and disrespectful to Plaintiff. Further, passengers overheard Jane Doe-1 state "that she was kicking Plaintiff off this plane no matter what."

24.

According to Plaintiff and other passengers aboard Flight 2066, several seats were available on the aircraft that Plaintiff and her daughter could have been easily relocated, which was safely away from the vomit.

25.

On April 23, 2019, Frontier released the following statement:

> **"During boarding of flight 2066 from McCarran International Airport (LAS) to Raleigh-Durham International Airport (RDU) last week, two passengers told the flight attendants that vomit was present in their seat area. The flight attendants apologized and immediately invited the mother and her teenage daughter to move to either end of the plane so that the seat area could be cleaned. The mother and daughter were also told that once boarding was complete they would be provided other seats if available. The daughter was also offered cleaning products and invited to use the lavatory to wash up. The mother was unsatisfied with the response and became disruptive. As a result, the flight attendants determined that the mother and daughter should be deplaned and accommodated on another flight. The mother refused, and following procedure, law enforcement was called. Law enforcement then requested that everyone deplane so that the mother and daughter could be**

**removed allowing the aircraft to be re-boarded and depart. We apologized to our passengers for the inconvenience caused by the departure delay. The safety of passengers and crew is our top priority at Frontier."**

26.

The above statement, or various forms of the same, was deliberately circulated by Frontier on multiple social media platforms, news outlets, and across the world-wide web. Frontier's assertion that "flight attendants apologized and immediately invited Plaintiff and her daughter to move to either end of the plane so that the seat area could be cleaned" is false. Further, Frontier's statement that Plaintiff became "disruptive" is also untrue. It is important to note, Frontier's account of what transpired on Flight 2066 has been discredited by several passengers who had first-hand knowledge of what actually occurred.

27.

Plaintiff and J.S. suffered severe mental anguish and emotional distress due to Defendants' deliberate and malicious acts. Plaintiff and J.S. sought the treatment of a mental health professional concerning their severe mental anguish and emotional distress. Further, Plaintiff suffered from significant hair loss as a result of her stress, which required medical attention.

28.

Further, Plaintiff and J.S. now suffers from severe mental anguish, emotional distress, humiliation, embarrassment and a tarnished reputation due to Defendant Frontier by knowingly disseminating lies about Rosetta and J.S.' removal from Flight 2066. As a result of Defendant Frontier's deliberate act and disseminated lies about Rosetta and J.S.' removal from Flight 2066, Plaintiff and J.S. sought the treatment of a mental health professional to manage their severe mental anguished and emotional distress. Plaintiff suffered from significant hair loss as a result of her stress that required medical attention. Further, J.S. was ridiculed and teased by her classmates at her school to the point J.S. no longer wanted to attend school.

29.

As a result of Defendants' action, Plaintiff and her daughter were subject to a well-being visit from North Carolina Child Protected Service upon their return to North Carolina. Plaintiff now feels as though her and her child are a part of the "system" all because she refused to clean another person's vomit and despite the fact she has been a hardworking and great parent for all of her children.

## CLAIMS FOR RELIEF

## COUNT ONE

## NEGLIGENCE

### 30.

The Plaintiff incorporates by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

### 31.

Defendants as "Common Carriers" owed a high duty of care to Plaintiff and J.S. and all passenger on Flight 2066, to ensure the safety of all passengers aboard the aircraft. Common Carriers' have a heightened duty with any standard of care. Defendant Frontier Airlines owed a heightened duty to Plaintiff and J.S. Specifically, Defendant Frontier Airlines owed a duty to all of its passengers from being exposed to bio-waste on board Flight 2066. Frontier as an air carrier has a statutory mandate to perform their services with the highest possible standard of care, and that an air carrier's responsibilities are too critical to permit it to transfer its obligations to another. As an air carrier, Frontier has a duty "to provide service with the highest possible degree of safety in the public interest." 49 U.S.C. § 44701(d)(l)(A) (emphasis added). Finally, air carrier's duty of care is non-delegable.

32.

"A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." Turner v. Mandalay Sports Entm't, LLC, 124 Nev. 213, 216, 180 P.3d 1172, 1174 (2008).

33.

Defendant Frontier Airlines through its agents breached its duty of care by failing to remove bio-waste from Flight 2066 prior to passengers boarding Flight 2066. As a result of their breach, Plaintiff and J.S. were directly exposed to the bio-waste. Notably, Flight 2066 was delayed for approximately twenty minutes in order to clean the aircraft and an additional hour to clean the bio-waste after Defendants had Plaintiff wrongfully removed from the flight and jailed and her daughter placed in NCPS's custody.

34.

Pursuant to the International Health Regulations (IHR (2005)) developed by the World Health Organization (WHO), Defendants were required by law to take swift action to remove bio-waste aboard their aircraft and to strictly adhere to certain safe practices as it relates to the removal of bio-waste on aboard their aircrafts pursuant to IHR (2005).

35.

As a result of Defendants' negligence Plaintiff and J.S. were substantially harmed. Plaintiff, J.S. and all passengers were to expose to bio-waste with a potential for unknown blood or airborne pathogens. J.S.'s skin was directly exposed to the bio-waste.

## COUNT TWO

## DEFAMATION
(slander and libel per quod)

36.

The Plaintiff incorporates by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

37.

Further, on the date of the incident, Defendants Frontier Airlines, Inc. and Frontier's agent stated on over the planes' intercom that "because of one rude passenger we are asking everyone to deplane." Defendant Frontier Airlines, Inc.'s oral representation over the intercom was a lie.

38.

Defendant Frontier Airlines, Inc.'s knowingly made a false statement on the date of the incident and created a narrative that Plaintiff was being disruptive and rude and as a result the passengers on Flight 2066 had to deplane the aircraft. Further, and as a result of Defendant Frontier Airlines, Inc.'s action, Plaintiff and J.S. were removed from Flight 2066, Plaintiff was arrested, and J.S. was placed in NCPS's custody. Plaintiff also had to purchase a one-way flight for her and J.S. in the amount of $1,023.00 from Delta Airlines to travel back to North Carolina once she was released from jail and J.S. was release from NCPS's custody.

39.

Defendants Frontier Airlines, Inc. and Frontier's agent deliberately made written false statements that Plaintiff was disruptive describing Plaintiff's behavior and accounts of what transpired aboard Flight 2066. Defendants circulated its false narrative through multiple social media platforms, news outlets, and across the world- wide web. Specifically, Defendants falsely represented to the public that Plaintiff was "disruptive" and the stated following:

> **The flight attendants apologized and immediately invited the mother and her teenage daughter to move to either end of the plane so that the seat area could be cleaned. The mother and daughter were also told that once boarding was complete they would be provided other seats if available. The daughter was also offered cleaning products and invited to use the lavatory to wash up. The mother was unsatisfied with the response and became disruptive.**

40.

As result, Plaintiff and J.S. were humiliated, embarrassed and suffered a tarnished reputation after Defendant knowingly disseminated lies concerning Plaintiff and J.S.' removal from Flight 2066. Defendants' assertion that "flight attendants apologized and immediately invited Plaintiff and her daughter to move to either end of the plane so that the seat area could be cleaned," is a lie.

41.

Plaintiff and J.S. now suffers from humiliation, embarrassment and a tarnished reputation after Defendants' defamed Plaintiffs' character by knowingly disseminated lies surrounding Plaintiff and J.S.' removal from Flight 2066. Beyond the emotional damages caused by Frontier, Plaintiff has an arrest record and J.S. now has a NCPS and North Carolina Child Protected Service's profile.

42.

Plaintiff also suffered hair loss as a result of Defendant Frontier's malicious action that caused Plaintiff extreme stress. As a result of her hair loss, Plaintiff sought medical treatment and has incurred medical expenses as a result of her treatment. Additionally, Plaintiff and J.S. sought the care of health professional to treat their emotional distress because Frontier Airlines knowingly disseminated lies surrounding Plaintiff and J.S. removal from Flight 2066. Plaintiff and J.S. incurred

medical expenses as a result of their treatment.

43.

Defendant Frontier's above defamatory statements was obvious on it's face because statements that Plaintiff was disruptive on Flight 2066 implies that Plaintiff committed the crime disorderly conduct aboard board Flight 2066. Further, Defendant Frontier's statements and publication are susceptible of two reasonable interpretations, one of which is defamatory and the other is not. Finally, Plaintiff and J.S. suffered special damages as a result of Defendant Frontier's above defamatory statements.

WHEREFORE, Plaintiff demands that a trial by jury be had on all Counts of her Complaint and that, following such trial, judgment be entered on her behalf against Defendant granting the following relief:

1. An award of compensatory damages for Plaintiff, in an amount Fifty-Five Million by the enlightened conscience against the Defendants;

2. An award of punitive damages for Plaintiff, in an amount of to be determine by the enlightened conscience against the Defendants;

3. An award of treble damages for Plaintiff, in an amount of to be determine by the enlightened conscience against the Defendants;

4. An award of pre-judgement and post-judgment interest;

5. Any other and further relief this Court deems just and proper; and any other

and further relief to which they may be entitled.

Respectfully submitted this 17th day of July 2020.

*/s/Harry M. Daniels*
Harry M. Daniels
Georgia Bar No.: 234158

DANIELS & JAMES, LLC

233 Peachtree St. NE Ste. 1200
Atlanta, GA 30303
Tel. 678.664.8529
Fax. 800.867.5248
daniels@danielsjameslaw.com

*/s/Julian M. Hall*
Julian M. Hall
North Carolina Bar No.: 43398

The Law Office of Julian M. Hall
817 N Mangum Street Durham, NC 27701
Tel. (919) 530-1130
Fax. (919) 530-1131
Julianmhall01@gmail.com

*/s/Sharika M. Robinson*
Sharika M. Robinson
North Carolina Bar No.: 44750

The Law Offices of Sharika M. Robinson, PLLC
10230 Berkeley Place Drive
Charlotte, NC 28262
Tel. 704.561.6771
Fax. 704.561.6773
srobinson@sharikamrobinsonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing FIRST AMENDED COMPLAINT FOR DAMAGES with the Clerk of Court using the court's CM/ECF system, which will send electronic notice to all counsel of record, as follows:

Robert J. Morris
SMITH ANDERSON BLOUNT DORSETT MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
jmorris@smithlaw.com

Brian T. Maye
ADLER MURPHY &MCQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, IL 60603
bmaye@amm-law.com

This 17th day of July 2020.

*/s/ Harry M. Daniels*
Harry M. Daniels